1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BASSEL BAROUDI,

11              Petitioner,                    No. CIV S-09-1450 MCE JFM (HC)

12        vs.

13   JOHN MARSHALL, Warden,

14              Respondent.

15                              FINDINGS AND RECOMMENDATIONS

16   _____/

17              Bassel Baroudi, a state prisoner represented by counsel, has filed a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his 2005 convictions in the

19   Sacramento County Superior Court, case number C050605, for which he is currently serving 14

20   years in prison.

21                              PROCEDURAL BACKGROUND

22              On August 22, 2005, Baroudi was convicted by jury of one count of attempting to

23   rape Heather M. (count one), two counts of attempted digital penetration of Heather M. (counts

24   two and three), one count of felony sexual battery as to each Heather M. and Jessica W. (counts

25   four and seven), one count of assaulting Heather M. with intent to commit rape (count five), and

26   one count of raping Jessica W. (count six).  LD 14 at 492-98.  The trial court imposed an

1

aggregate sentence of 14 years in prison, consisting of a four year term for count five, four

consecutive one year terms for each of counts two, three, four, and seven, and a consecutive term

of six years for count six.  LD 14 at 510-11.

On direct review in case number C050605, the California Court of Appeal, Third

District, affirmed the convictions and sentence in a reasoned opinion.  *People v. Baroudi*, No.

C050605 (Cal. Ct. App. 3rd Dist. March 28, 2007); Lodged Document ("LD") 4.  On June 13,

2007, the California Supreme Court denied review of a petition for review.  LD 5, 6.

Petitioner claimed ineffective assistance of counsel in a petition for writ of habeas

corpus filed to the trial court.  LD 9.  The Sacramento County Superior court held an evidentiary

hearing and then denied relief.  LD 8.  Petitioner raised the same ineffective assistance claims to

the California Court of Appeal and California Supreme Court; each court denied them without

comment.  LD 11, 13.

Petitioner filed this action on May 25, 2009.  Respondent's answer and

petitioner's traverse are also before the court and the matter is submitted for decision.

FACTUAL BACKGROUND

The following statement of facts is that of the California Court of Appeal on direct

review.  Petitioner is the defendant referred to therein.

> On December 2, 2002, Heather attended a Sacramento Sheriff's
> Department Christmas party at the Arabian Nights restaurant. She
> was conservatively dressed in a black turtleneck dress that covered
> her down to below her knees. During the party, defendant spoke to
> Heather after he approached the table where she was sitting.
> Defendant told Heather the owner of the restaurant was hiring, and
> Heather said she was looking for work. Defendant gave Heather his
> business card. Heather told defendant she was a single mother.
> Heather was happy she might get a job, but she did not flirt with
> defendant and did not express any interest in him.
>
> At the end of the party, Heather asked an employee where the
> restroom was. The employee pointed it out. Defendant asked if he
> could help her find it, but Heather declined the help. Defendant
> followed her anyway. Heather thanked defendant outside the
> restroom and went in.

2

When Heather came out of the stall, defendant was in the women's restroom. She told him to leave and went to a sink, trying to ignore him. Defendant came up behind her and pushed her over onto the counter with his body weight on her. He lifted her dress and pulled down her pantyhose. Defendant reached up Heather's dress and touched her breasts, as well as reaching around and touching her vagina with his hand. Defendant also touched Heather's anal area with his hand. Looking in the mirror, Heather saw defendant's erect penis. Defendant attempted to insert his penis into Heather's vagina. During the attack, Heather resisted, trying to wiggle away from defendant. She finally pushed away and left the restroom.

On October 9, 2003, Jessica was an employee at the Thunder Valley Casino when she received an assignment to drive defendant, a patron of the casino, to his car in Citrus Heights. During the drive, defendant and Jessica talked about her job, her son, her age, and her marital status. Defendant asked if Jessica was interested in driving for his friend's limousine company. He gave her a business card.

When they arrived at defendant's car, defendant asked Jessica to follow him to his house so he could get money to give her a tip. Defendant parked the car in the garage and went through the house to meet Jessica at the front door. Defendant opened the front door, grabbed Jessica by the arm, and pulled her into the house. He led her into a family room area and sat her down on a futon. Defendant left the room, saying he was going to get money. Jessica did not leave because she was "in shock."

Defendant returned to the room and put about 22 one-dollar coins in Jessica's cupped hands. He asked her if she was nervous, and she replied that she was. Defendant asked her to stay, but Jessica said she could not. Defendant put his hand down Jessica's shirt and touched her breast. Jessica told defendant "no," but defendant rearranged the futon to make it go flat into a bed. He pushed her back onto the bed, unbuckled her belt, and stood to unfastened his own pants. When he stood, Jessica refastened her belt. Defendant again unbuckled Jessica's belt and unfastened her pants. He exposed his penis and pulled her pants down to her knees. When he was unable to insert his penis into her vagina, he pulled her pants off one leg, spread her legs, and penetrated her vagina with his penis. Defendant repeatedly asked if it was okay, and Jessica continued to say "no." After defendant ejaculated, he let Jessica go to the bathroom. After using the bathroom, Jessica left defendant's house.

LD at 2-4.

ANALYSIS

I. *Standards for a Writ of Habeas Corpus*

3

1   Federal habeas corpus relief is not available for any claim decided on the merits in

2   state court proceedings unless the state court's adjudication of the claim:

3   (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
4   determined by the Supreme Court of the United States; or

5   (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
6   State court proceeding.

7   28 U.S.C. §2254(d).

8   Under section 2254(d)(1), a state court decision is "contrary to" clearly

9   established United States Supreme Court precedents if it applies a rule that contradicts the

10  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

11  indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different

12  result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06

13  (2000).

14  Under the "unreasonable application" clause of section 2254(d)(1), a federal

15  habeas court may grant the writ if the state court identifies the correct governing legal principle

16  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

17  prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ

18  simply because that court concludes in its independent judgment that the relevant state-court

19  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

20  application must also be unreasonable."  *Id*. At 412; *see also Lockyer v. Andrada*, 538 U.S. 63,

21  75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

22  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

23  The court looks to the last reasoned state court decision as the basis for the state

24  court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Under AEDPA, a state

25  court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

26  by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Where the state court reaches a

4

1   decision on the merits but provides no reasoning to support its conclusion, a federal

2   habeas court independently reviews the record to determine whether habeas corpus relief is

3   available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

4   II.  *Petitioner's Claims*

5   **1.  *Grounds One through Three***

6             In Grounds one through three, petitioner claims trial counsel rendered ineffective

7   assistance.  In particular, petitioner complains that trial counsel failed to investigate his medical

8   conditions, including "diabetes, heart condition, and other disabilities that rendered him virtually

9   incapable of committing the acts as alleged" (ground one); failed to investigate and present the

10  testimony of two witnesses present at the restaurant on the night of the attempted rape of Jessica

11  (ground two); and failed to investigate until sentencing the evidence that petitioner had "a good

12  character for law-abidingness and non-violence" (ground three).  Pet. at 5-6.

13  a.  *State Court Opinion*

14            The last reasoned state court opinion rejecting petitioner's claims of ineffective

15  assistance was that of the California Superior Court on state habeas corpus.[1]  Following an

16  evidentiary hearing on the matter, the trial judge explained his reasoning for rejecting the habeas

17  corpus petition as follows:

18                    ... I first address the question of incompetence in the failure to call
                      two witnesses that were brought here for the purposes of this
19                    hearing that Mr. Cozens did not call at trial.

20                    The court specifically finds that that within itself did not fall below
                      the standard of care in that there was sufficient testimony brought
21                    before this jury by other witnesses in terms of the general
                      substance and content that those witnesses would have testified to
22                    had they been called.  That is to say, there were other witnesses
                      that covered those areas and certainly there's no incompetence in
23                    the failure to call them.

24

25            [1] Although the trial court was presented with and rejected three separate claims of
    ineffective assistance raised (petitioner's grounds one, two and three in the federal petition), the
26  trial court's oral explanation of decision only explicitly addressed grounds one and two.

Really what happened here is that Mr. Baroudi wishes to hang his hat, so to speak, in terms of the failure of Mr. Cozens to bring forth medical evidence during the course of trial that would have resulted in a meritorious defense for him.  That is not to say it need not result in an acquittal, but it would have been something that would have been meritorious.

The first consideration I note is that there were different opinions by all three medical doctors in terms of whether or not Mr. Baroudi could or could not have had an erection with or without Viagra and with or without self-stimulation.

And I'm going to deal first with the last case, that's the Jessica [W.] incident where the argument is that he was surprised because had this self-stimulation on the part of this victim been presented it would have been a substantial factor on the question of consent.

Well, the Court feels it may or may not have been a factor because there have been numerous rape cases where victims have actively participated in rape situations out of fear.  And while the argument is no force was used, obviously the jury believed that her participation occurred because of fear and, as such, there was a finding of guilt in terms of rape as to this victim.

During the course of this in terms of whether he could or could not have had stimulation, you know, I don't know if you really want to argue that, because during the course of his testimony here he didn't testify at trial, he indicated it took two or three minutes of self-stimulation by this victim for him to receive the type of erection where he could have penetration.  Indeed there was penetration in terms of the trace evidence being linked to him.

In this case, there's no indication that he was impotent.  He said – my understanding it was during that period of time or that specific time he used Viagra or did not use Viagra, his defense was consent, not the lack of obtaining and erection [*sic*].  And really factually it becomes a question in terms of whether or not that would have added anything to the equation.

I'm going to move on to... the '02 incident with [Heather M.:] his defense was he wasn't there.  Short and sweat [*sic*].  There's a conflict in the evidence in terms of whether he was there or whether he was not there.  Some folks say he's around the bathroom.  Other folks said he wasn't.

And what came out in terms of from the medical some says he could have had an erection without stimulation, others say he could not or may not have had an erection but certainly what came out during his testimony is from someone stimulating him he could have had one in two to three minutes.

6

So the question is if you believe he was by the – that bathroom door at least that long, could he have self-stimulated himself to obtain an erection that this victim indicated she saw at one point in the mirror.

Now we talk about degrees. And I'm not talking about whether he had a real hard erection, whether he had a lengthy erection or whether he had one in between, because all these medical experts did not feel he was impotent to the point where he could have no erection at all, it was just a question of degree.

And from human experience it is known dealing with whatever partners that you have, you can have intercourse with a very soft erection depending on if the two humans are compatible to that. You don't necessarily have to have hard – real hard erection to have sex.

And basically it's in the eyes of the beholder anyway; that's what they said, and what I believe and I think that's what the evidence showed.

So then it becomes a question, did these doctors rule out that he was impotent to the point where he could have no erection at all and significantly undercut the testimony of not only this victim and this other victim to the deprive him of a meritorious defense [?]

And of course the burden of proof rests upon the person who brings the writ. The Court makes the specific finding on this record that the – Mr. Baroudi has not made – met his burden of proof on the question of attorney's incompetence.

The writ is denied.

LD 9 at 206-10.

b. *Analysis*

Habeas corpus petitions asserting ineffective assistance of counsel are governed by the clearly established federal law of *Strickland v. Washington,* 466 U.S. 668, 686, (1984). *See Baylor v. Estelle,* 94 F.3d 1321, 1323 (9th Cir. 1996). Ineffective assistance of counsel exists where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. In order to make a state a cognizable claim under *Strickland,* petitioner must show, first, that counsel performed deficiently, and second, that prejudice resulted from counsel's deficient

1   performance.  *Id.* at 688.

2          "Surmounting *Strickland's* high bar is never an easy task."  *Harrington v. Richter*,

3   131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

4   Establishing an unreasonable application of *Strickland* by a state court is all the more difficult:

5   "the question is not whether counsel's actions were reasonable[;] [t]he question is whether there

6   is any reasonable argument that counsel satisfied *Strickland's* deferential standard.  *Richter*, 131

7   S. Ct. at 788 (internal quotations and citations omitted).  In this case, a reasonable argument

8   exists that each of counsel's challenged omissions resulted from his competent professional

9   judgment.

10                                  ***i.  Ground One***

11          In support of ground one, petitioner alleges that counsel failed to investigate his

12   medical conditions, including diabetes and a heart condition, which rendered him virtually

13   incapable of obtaining an erection, and which would have shown that he was incapable of

14   committing the acts as alleged.  Pet. at 5 & 8.  The petition alleges no other facts in support of

15   this claim.  Conclusory allegations such as these which are unsupported by specific assertion of

16   facts do not warrant relief.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("It is well-

17   settled that '[c]onclusory allegations which are not supported by a statement of specific facts do

18   not warrant habeas relief'" (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).

19          Petitioner, through counsel,[2] explains in his traverse that since the rules governing

20   section 28 U.S.C. 2254 proceedings require respondent to lodge the state court's documents

21   relevant to the claims with the federal court for review, he relies on those documents to

22   demonstrate the merits of his claims.  This assertion is not well taken.  *See Delgadillo v.*

23   *Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) ("Arguments raised for the first time in

24   Petitioner's reply brief are deemed waived.").

25

26          [2] Petitioner has been represented by counsel throughout this action.

1    In any event, ground one lacks merit.  At an evidentiary hearing on this issue,

2    petitioner's trial counsel testified he did not present evidence that petitioner suffered from

3    erectile dysfunction because

> The [first charged] incident occurred in '02. [Petitioner]'s first
> complaint that I understood from talking to him, to his physician
> about erectile dysfunction, did not occur until my belief is first half
> of '04, 2004.  So that it was substantially on the order of 18 to 20
> months after the McKibben incident. [¶] ... [¶] ...[T]he defense was
> more this was a fabrication and [petitioner was] not involved.  If
> you presented evidence of erectile dysfunction you conceded that
> he was there at the time.  The defense was, he was at the table
> drinking coffee at the time.

9    LD 9 at 171, 173.  As to the second charged incident, trial counsel testified

> I don't think that [evidence of erectile dysfunction] would have
> helped at all because his concession from the beginning was it was
> intercourse and it was consented.  So I don't think it looked – it
> would only have looked like a contrivance.

13    LD 9 at 176.  And further:

> [T]here were three or four women who were lined up, including
> [petitioner]'s estranged or divorced wife, who was prepared to say
> there was at least some sort of sexual activity he had engaged in
> with them that was either unwanted or and could be argued by the
> prosecution as being forced. [¶] If you put in a history of sexual
> dysfunction, it seemed to me, one of the strategies, it seemed to me
> and the concerns, that the rebuttal to that would be put on women
> who had been either mauled, touched, in one case I think there was
> a forcible sodomy I think alleged I think that was by his wife. [¶]
> And so it seemed to me it could open up that area for you to
> present evidence in opposition to or rebuttal to any claim of
> erectile dysfunction.

21    LD 9 at 177.

22    Following the evidentiary hearing, the trial court determined that petitioner was

23    not deprived of a meritorious defense because none of the experts who testified about his erectile

24    dysfunction concluded that he was physically unable to commit the acts as alleged.  LD 9 at 210.

25    Petitioner, in his traverse, attempts to demonstrate that trial counsel's decision not to present

26    evidence of erectile dysfunction constituted deficient performance.  Even considering the

1   argument improperly advanced for the first time in the traverse, however, petitioner fails to show

2   that the state court's denial of the claim was an unreasonable application of the *Strickland*

3   standard.

4           Testimony at the hearing established that the defense could have offered some

5   evidence that petitioner had risk factors for heart disease and diabetes at the time of the charged

6   incidents which made it likely that he also suffered from symptoms of erectile dysfunction at that

7   time.  Petitioner's medical records, however, were ambiguous on the issue.  Despite multiple

8   visits during the relevant period of time where other problems were discussed, petitioner's

9   physician testified there was no explicit reference to erectile dysfunction or anything of the sort

10  until June 18, 2004, the date of a FAX from Raley's pharmacy indicating that Viagra was not

11  covered by petitioner's insurance.  LD 9 at 54-61.  A notation on the chart indicated that

12  petitioner's Viagra prescription had been last filled on December 17, 2003.  LD 9 at 39-40.  From

13  looking at the records, his physician could not say with certainty when he first prescribed Viagra

14  to petitioner.  LD 9 at 40.

15          The second physician called by the defense, a urologist, testified that, based on his

16  review of petitioner's medical records he believed that it was "highly unlikely" that petitioner

17  could have experienced and maintained an erection at the time of the charged incidents without

18  taking Viagra, and that it "most likely" would have required substantial stimulation.  LD 9 at 82-

19  85.  Having access to Viagra, however, would have made it "more likely" that petitioner was

20  physically capable of doing the acts as charged.  LD 9 at 85.

21          A third physician, a urologist called by the prosecution, agreed that petitioner had

22  risk factors for erectile dysfunction but did not believe that it was medically impossible for him

23  to obtain an erection in December of 2002.  LD 9 at 99-101, 105.

24          In sum, the defense could have offered evidence that petitioner *might* have had

25  trouble obtaining or maintaining an erection.  A reasonable argument certainly exists that

26  counsel's strategic decision not to do so resulted from his competent professional judgment, for

10

1   the reasons he gave in his evidentiary hearing testimony.  On this record, the state court's

2   rejection of petitioner's ground one is based on a reasonable determination of the facts, and is not

3   contrary to, or an unreasonable application of clearly established Supreme Court precedent.  *See*

4   *Strickland*, 466 U.S. at 690-91 (holding that strategic choices made after less than complete

5   investigation by counsel are reasonable to the extent that reasonable professional judgments

6   support the limitations on investigation); *Iaea v. Sunn*, 800 F.2d 861, 865 n.4 (counsel has no

7   duty to pursue every possible line of defense where counsel reasonably does not believe the

8   defendant's interests would be advanced.) (citing *Tollett v. Henderson*, 411 U.S. 258, 267-68

9   (1973)); *Turner v. Calderon*, 281 F.3d 851 (9th Cir. 2002) (explaining that the relevant inquiry is

10  not what defense counsel could have presented, but rather, whether counsel's actions were

11  reasonable).

12          ***ii.  Ground Two***

13          For ground two, petitioner alleges counsel failed to investigate and present

14  witnesses who were at the restaurant on December 2, 2002, and who could have "testified

15  regarding the conduct of the complaining witness" and "confirmed petitioner's innocence."  Pet.

16  at 5, 8.  Once again, the allegations are vague, conclusory, and lacking sufficient detail to

17  demonstrate an entitlement to relief.  *See Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26; *United*

18  *States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (claim that counsel failed to call witnesses

19  at trial was insufficient with no showing what the witnesses would have testified and how the

20  outcome might have changed).

21          Notwithstanding petitioner's failure to allege sufficient facts in the petition, the

22  record demonstrates the claim lacks merit.  Trial counsel testified at the evidentiary hearing that

23  he did not call witness Deniese Haddad, who was interviewed by the defense investigator, for

24  several reasons, including because she "was gone prior to the incident in the bathroom," she

25  would testify to substantially the same information that was available (and presented) from

26  another witness, and finally, because counsel felt she would over-emphasize the victim's

provocative dress and behavior.  LD 9 at 178-79.  Counsel "did not want to emphasize that [Heather] was this buxom woman who was flirtatious or doing anything with [petitioner], because I didn't want to give the jury any kind of say, well, of course, he did it because he was attracted to this woman."  LD 9 at 178.

Trial counsel testified he did not call witness Nader Babaei because counsel had seen Babaei testify previously on petitioner's behalf in a brandishing case and did not think Babaei made a good witness.  LD 9 at 179.  In particular, the latter witness had a pronounced accent making him difficult to understand, tended to be confusing in his testimony, was not particularly smart, and was susceptible to giving up points on cross-examination by the prosecutor.  LD 9 at 179.  Based on this evidence, the superior court determined that petitioner had failed to show deficient performance by counsel for failing to call these two witnesses.

Petitioner's trial counsel articulated reasonable, informed strategic decisions not to call these two witnesses at trial.  As to each witness, his strategy was based on either his personal observations of credibility or information obtained in the defense investigation.  Either method of decision was proper.  *See LaGrand v. Stewart*, 133 F.3d 1253, 1274 (9th Cir. 1998) (counsel is not obligated to personally interview each witness in order to be adjudged to have performed effectively); *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (trial counsel does not need to interview a witness if the witness's account is fairly known to counsel). Considering and applying the strong presumption of competence mandated by *Strickland,* 466 U.S. at 673, petitioner fails to demonstrate that the state court's rejection of this claim unreasonably applied clearly established Supreme Court precedent.

### iii. Ground Three

For his third ground, petitioner alleges counsel failed to investigate and present, until sentencing, evidence of his good character for "law-abidingness" and non-violence.  Pet. at 6, 8.  Since each of the state courts denied this claim without comment, it is independently reviewed in this court.  "Independent review of the record is not de novo review of the

1   constitutional issue, but rather, the only method by which we can determine whether a silent state

2   court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

3   2003).  The habeas petitioner still has the burden of "showing there was no reasonable basis for

4   the state court to deny relief." *Richter*, 131 S.Ct. at 784.

5          The California Code of Evidence permits a criminal defendant to offer evidence

6   of his character or trait of character in the form of opinion or reputation evidence.  Cal. Code

7   Evid. § 1102.  Presentation of such evidence "put[s] the defendant's character in issue, thus

8   opening the door to prosecution evidence tending to rebut that specific asserted aspect of the

9   defendant's personality." *People v. Bacigalupo*, 1 Cal.4th 103, 142 (1991) (internal quotation

10  and brackets omitted), *vacated on other grounds*, 506 U.S. 802 (1992).

11         The petition does not identify necessary details such as the witnesses who should

12  have been called or the nature of their potential testimony.  In his traverse, petitioner states that

13  Zahra Seyyedin, the Vice-President and Branch Manager of American River Bank in

14  Sacramento, who became acquainted with him as a customer at the bank, could have testified

15  that she never saw him act inappropriately towards female tellers or in social situations.  Trav. at

16  35.  Contrary to petitioner's argument, admission of this type of evidence at the guilt phase of

17  trial could not possibly have produced a different result.  Petitioner fails to demonstrate that

18  counsel rendered ineffective assistance in this regard, or that prejudice resulted.  *See Strickland*,

19  466 U.S. at 690, 694.

20  *2.  Ground Four*

21         Petitioner claims his due process rights were violated when the prosecutor

22  committed prejudicial misconduct during closing argument by likening petitioner to a predatory

23  animal who went after easy prey.  The prosecutor argued, concerning Jessica:

24         You have a young, naïve girl who is giving this big shot gambler a
           ride home. He has lost money, the casino owes him. And like a
25         spider luring its prey into his web, [he] gets Jessica into his house
           where he can do what he wants with her, because remember, the
26         crime of rape is private, it is secret, we don't want witnesses.

LD 15 at 452.

Defense counsel argued at length that Jessica's self-described calm and passive behavior showed that she consented.  LD at 468-70.  In rebuttal, the prosecutor argued:

Now, when an animal like that is out hunting, what is he looking for? What kind of prey is he looking for? Is he looking for something that is going to hurt him? Is he looking for prey that is going to fight back? Is he looking for prey that's going to cause trouble for him? No. He's looking for the easy prey, something that's going to be the easy kill, that he can dispose of as he chooses.

They are prey for a reason. They are victims for a reason. And it's really no difference here. Heather and Jessica are easy prey, at least they were at that time for that man right there.

Neither one of them fought back, neither one of them. Neither one of them yelled out. Neither one of them hurt their attacker in any way.

It's interesting they were both passive. They both acted exactly like he thought they'd act. He picked them for a reason. If you don't think he knew exactly what he was looking for, you are wrong. It is kind of his old MO, get to know you, find out a little bit about you. It is no wonder, no surprise that these girls are so similar. That's why he chose them.

And you heard kind of the same thing from both of them, he kind of sets up his game, gets them talking a little bit, you know, find out about you. Let me break down these barriers a little bit and let me hear about you, let me determine are you vulnerable, are you somebody that I can hunt?

He wants to find out are you unattached. Oh, you are a single mom. Are you looking for better work? Huh, that's interesting.
The defendant, he is a smart guy. He owns his own business. Certainly has his intelligence, but he has his sicknesses, too, which is hunting women like this. And he is keen and he knows what he is looking for. And he is saying let me help you. I can help you, but what he is thinking is step closer, I don't bite. And he is saying here's my business card. I'm a good guy, but what he is thinking is I can't wait to get my hands on your nipples. And he says call me for an interview, but what's going on is his penis is getting erect.

His routine for each one of them is the same and just like in the animal world, he will hunt again.

LD 15 at 475-76.

14

1    At this point, defense counsel objected that the prosecutor was "appealing to the

2  emotion." LD 15 at 476.  The trial court held:

3              Well, no, the objection is overruled. [¶] Now, I want to tell you
               folks something. These lawyers are giving their best interpretation
4              of the evidence to you like they see it. You don't have to accept
               none *(sic)* of it.  What is important is what you all determine to be
5              the relevant facts. [¶] And that also goes with the law. If anything
               they say regarding the law conflicts with my instructions, disregard
6              both of them.

7  LD 15 at 476.

8  a. *State Court Opinion*

9              The last reasoned state court rejection of petitioner's claim of prosecutorial

10 misconduct is that of the California Court of Appeal for the Third Appellate District on direct

11 review:

12             The Attorney General asserts that defendant's assertion of
               prosecutorial misconduct was forfeited by failure to object
13             adequately. The objection that the prosecutor's argument was
               "appealing to the emotion" was not specific as to what defense
14             counsel found wrong with the argument. Defense counsel did not
               refer to the jungle analogy defendant now finds so offensive and
15             made the objection only after the prosecutor said defendant would
               do it again. In addition, defense counsel asked for no curative
16             instruction. "[T]o preserve such a point misconduct must be
               assigned as error at trial with a request that the jury be instructed to
17             disregard its effect. Simply to object or make an assignment of
               misconduct without seeking a curative admonition is not enough."
18             (*People v. Poggi* (1988) 45 Cal.3d 306, 335.) Thus, defendant
               failed to preserve his prosecutorial misconduct argument for
19             appeal. In any event, the contention is without merit.
               Defendant asserts he was deprived of due process and a fair trial by
20             the prosecutor's comments. The California Supreme Court's
               response to a similar argument is instructive: "The prosecutor said,
21             at various times, that defendant lied at trial; that he was unwilling
               to accept or admit responsibility for what he had done; that he
22             lacked remorse or emotion; that he was dangerous; that he bragged
               about the murder; that defendant lacked humanity; that defendant
23             was frightening; and that the jury had 'before you a man, and I use
               that term "man" in this context very broadly. We have a man who's
24             going down for the third time.' Defendant now claims these
               comments improperly denigrated him. The unobjected-to
25             comments were all based on the evidence and came within the
               broad scope of permissible argument. (*People v. Wharton* (1991)
26             53 Cal.3d 522, 567.)" (*People v. Chatman* (2006) 38 Cal.4th 344,

387 (*Chatman* ).)

The *Chatman* court rejected the assertion the prosecutor's conduct violated the defendant's rights: "Defendant relies on two cases, neither of which cause us to find misconduct here. In *Darden v. Wainwright* (1986) 477 U.S. 168, 180 [91 L.Ed.2d 144], the United States Supreme Court stated in general that various prosecutorial jury arguments 'undoubtedly were improper,' although it found no prejudice. Among the many comments the high court cited was the prosecutor's referring to the defendant as an 'animal.' (*Id.* at p. 179.) The court did not specifically single out use of the word 'animal' as improper. (*Id.* at p. 180.)" (*Chatman, supra,* 38 Cal.4th at p. 388.)

Finally, the *Chatman* court found that the prosecutor's comments, though harsh, were based on the evidence: "The prosecutor here commented on evidence that defendant tortured a woman to death in the presence of his two-year-old son. The argument was forceful but supported by the evidence. We see no similarity between the remarks here and the overall argument condemned in [*Darden v. Wainright, supra,* 477 U.S. 168]. In *Dubria v. Smith* (9th Cir.1999) 197 F.3d 390, the court condemned the prosecutor's argument that the defendant, who he described as a '"piece of garbage,"' was fabricating his defense. (*Id.* at p. 402.) The argument implied that the prosecutor had personal knowledge that the jury did not. The court concluded that the prosecutor both expressed an improper personal opinion in the defendant's guilt and improperly 'denigrat[ed] the defense as a sham.' (*Ibid.*) It did not state that referring to the defendant as a '"piece of garbage,"' (*ibid.*) by itself, would have been improper if the reference had been based solely on the evidence. The argument made here was qualitatively different and permissible." (*Chatman, supra,* 38 Cal.4th at p. 388.)

The *Darden* court noted the proper standard to evaluate whether a prosecutor's comments require reversal: "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' [Citation.]" (*Darden v. Wainright, supra,* 477 U.S. at p. 181.)

In *Darden,* as noted, the court did not find the comments prejudicial. Defendant cites, in particular, the comment by the *Darden* prosecutor that the defendant was an "animal." The prosecutor said, "'The first witness that you saw was Mrs. Turman, who was a pathetic figure; who worked and struggled all of her life to build what little she had, the little furniture store; and a woman who was robbed, sexually assaulted, and then had her husband slaughtered before her eyes, by what would have to be a vicious animal.' [Citation.] 'And this murderer ran after him, aimed again, and this poor kid with half his brains blown away.... It's the work of an animal, there's no doubt about it.' [Citation.]" (*Darden v.

1    *Wainright, supra,* 477 U.S. at p. 179, fn. 7.)

2          In this case, it was not a gratuitous epithet hurled at defendant. The
      prosecutor was entitled to explain his theory of why Heather and
3          Jessica were passive. Using the analogy of an animal that chooses
      its prey based on passiveness did not impermissibly denigrate
4          defendant, given the evidence and the prosecution's valid theory.

5          Although we cannot say the comment that defendant "will hunt
      again" was a proper comment on the evidence, it did not so infect
6          the trial with unfairness that it made the resulting conviction a
      denial of due process. (*Darden v. Wainright, supra,* 477 U.S. at p.
7          181.) In other words, we find it unlikely the jury would have
      ignored the instructions based on this brief comment that defendant
8          would do it again if the jury did not find him guilty.

9    LD 4 at 7-11.

10   b.  *Analysis*

11          Respondent contends this ground is procedurally barred.  As a general rule, a

12   federal habeas court "will not review a question of federal law decided by a state court if the

13   decision of that court rests on a state law ground that is independent of the federal question and

14   adequate to support the judgment."  *Calderon v. United States District Court (Bean)*, 96 F.3d

15   1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also*

16   *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011).  For a state procedural rule to be independent,

17   the state law basis for the decision must not be interwoven with federal law.  *LaCrosse v.*

18   *Kernan,* 244 F.3d 702, 704 (9th Cir. 2001).  To be deemed adequate, it must be well established

19   and consistently applied.  *Poland v. Stewart*, 169 F.3d 575, 577 (9th Cir. 1999).  An exception to

20   the general rule exists if the prisoner can demonstrate either cause for the default and actual

21   prejudice as a result of the alleged violation of federal law, or that failure to consider the claims

22   will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

23          Once the state pleads the existence of an independent and adequate state

24   procedural ground as an affirmative defense, the burden shifts to petitioner to place the adequacy

25   of that procedural rule in issue, as "the scope of the state's burden of proof thereafter will be

26   measured by the specific claims of inadequacy put forth by the petitioner."  *Bennett v. Mueller*,

17

1   322 F.3d 573, 585-86 (9th Cir. 2003); *see also King v. Lamarque*, 464 F.3d 963, 967 (9th Cir.

2   2006) ("*Bennett* requires the petitioner to 'place [the procedural default] defense in issue" to shift

3   the burden back to the government").  Here, petitioner makes no response to the procedural bar

4   asserted by respondent.

5            The state court, in this case, found that petitioner had failed to preserve his

6   prosecutorial misconduct claim for appeal, but went on to reject the claim on its merits.  Because

7   the claim clearly lacks merit, it is recommended that this court deny it on the merits as well.  *See*

8   *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that a reviewing court need not

9   invariably resolve the question of procedural default prior to ruling on the merits of a claim);

10  *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[A]ppeals courts are empowered to,

11  and in some cases should, reach the merits of habeas petitions if they are, on their face and

12  without regard to any facts that could be developed below, clearly not meritorious despite an

13  asserted procedural bar.").

14           The appropriate standard for a federal court reviewing a claim of prosecutorial

15  misconduct on habeas corpus is the narrow one of whether the conduct violated due process.  *See*

16  *Darden v. Wainwright*, 477 U.S. 168, 1 81 (1986); *see also Smith v. Phillips*, 455 U.S. 209, 219

17  (1983) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is

18  the fairness of the trial, not the culpability of the prosecutor").  A challenge to a portion of a

19  closing argument is "examined within the context of the trial to determine whether the

20  prosecutor's behavior amounted to prejudicial error."  *United States v. Young*, 470 U.S. 1, 12

21  (1985).  Factors to be considered in determining whether habeas relief is warranted include

22  whether the prosecutor manipulated or misstated the evidence; whether the conduct implicated

23  other specific rights of the accused; whether the objectionable content was invited or provoked

24  by defense counsel's argument; whether the trial court admonished the jurors; and the weight of

25  the evidence against the defendant.  *Darden*, 477 U.S. at 181-82.  Relief is available only if the

26  misconduct rendered the trial fundamentally unfair.  *Id*. at 181.

1    Here, the trial court properly instructed the jury that "[s]tatements made by the

2    attorneys during the trial are not evidence."  LD 15 at 401.  There is an "almost invariable

3    assumption of the law that jurors follow their instructions," *Richardson v. Marsh*, 481 U.S. 200,

4    206 (1987), and nothing in the record suggests that the jurors here did otherwise.  The

5    prosecutor's challenged argument at issue here was not of the type that necessarily infects a trial

6    with such unfairness that a resulting conviction violates due process, as it was fairly related to the

7    evidence admitted at trial and did not manipulate or misstate the evidence.  *See Darden*, 477 U.S.

8    at 182.  Thus, the California Court of Appeal reasonably rejected petitioner's prosecutorial

9    misconduct claim, consistent with applicable Supreme Court precedent, and no relief is available.

10   *3.  Ground Five*

11   For ground five, petitioner claims that insufficient evidence supported his

12   conviction on count three, attempted anal penetration with a foreign object.

13   a.  *State Court Opinion*

14   The California Court of Appeal rejected the claim on direct review in the last

15   reasoned state court decision applicable to this claim:

16        On appeal, we "review the whole record in the light most favorable to the
          judgment below to determine whether it discloses substantial evidence –
17        that is, evidence which is reasonable, credible, and of solid value – such
          that a reasonable trier of fact could find the defendant guilty beyond a
18        reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)
          Substantial evidence includes circumstantial evidence and the reasonable
19        inferences flowing from it.  (*In re James D.* (1981) 116 Cal.App.3d 810,
          813.)

20
          On direct examination, Heather testified she did not remember
21        whether defendant touched her anal area.  Detective Sophia
          McBeth-Childs testified that she took a statement from Heather on
22        December 3, 2002, the day after the incident.  Heather told her that
          defendant, standing behind her, touched her anal opening with his
23        fingers.  During that time, Heather was moving her hips to avoid
          having him penetrate her vagina with his penis.  She eventually
24        was able to push away from him.

25        Defendant claims this is evidence of, at most, a sexual battery, with
          respect to the anal opening, because there is no evidence defendant
26        tried to penetrate the anal opening. To the contrary, defendant

19

1   committed his attack on Heather as she squirmed and finally
    pushed free of him. The jury could reasonably infer that he was
2   touching the anal opening with his fingers in an attempt to
    penetrate and was only prevented from penetrating by Heather's
3   resistance.

4   Defendant asserts the jury could not infer he attempted to penetrate
    Heather's anal opening with his fingers because Heather described,
5   in detail, his attempt to penetrate her vagina with his penis but did
    not provide similar detail with respect to the attempt to penetrate
6   the anal opening. This argument is not persuasive. The detail with
    which Heather described the attempt to penetrate her vagina is
7   likely a product of the questioning rather than the quality of the
    evidence. The fact that defendant touched Heather's anal opening
8   while Heather squirmed to get away is sufficient to sustain the
    inference defendant attempted to penetrate the anal opening.

9

10  LD 4 at 11-12.

11  b.  *Analysis*

12          The Due Process Clause of the Fourteenth Amendment protects an accused

13  against conviction except upon proof beyond a reasonable doubt of every fact necessary to

14  constitute the crime with which he is charged.  *In re Winship*, 397 U.S. 358, 364 (1970).  On

15  habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the

16  evidence in the light most favorable to the prosecution, any rational trier of fact could have found

17  the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S.

18  307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

19          The *Jackson* standard is applied "with explicit reference to the substantive

20  elements of the criminal offense as defined by state law."  *Davis v. Woodford*, 384 F.3d 628, 639

21  (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.)  The dispositive question is "whether the

22  record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Chein v.*

23  *Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Under the

24  AEDPA, this standard is applied with an additional layer of deference.  *Juan H. v. Allen*, 408

25  F.3d 1262, 1274-75 (9th Cir. 2005).  This court must ask "whether the decision of the California

26  Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of

1   this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

2            A court reviews the entire record when the sufficiency of the evidence is

3   challenged on habeas corpus. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

4   *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987).  It is

5   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

6   reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  If the trier of

7   fact could draw conflicting inferences from the evidence, the court in its review will assign the

8   inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994).  The

9   inquiry of focus is not whether the evidence excludes every hypothesis except guilt, but rather,

10  whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458

11  (9th Cir. 1991).

12           Under California law, "any person who commits an act of sexual penetration

13  when the act is accomplished against the victim's will by means of force, violence, duress,

14  menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be

15  punished by imprisonment..." Cal. Penal Code § 289(a)(1).  Sexual penetration is "the act of

16  causing the penetration, however slight, of the genital or anal opening of any person... for the

17  purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or

18  device, or any unknown object." Cal. Penal Code § 288(k)(1).  Finally, "[a]n attempt to commit

19  a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but

20  ineffectual act done toward its commission." CALJIC No. 6.00.

21           Detective McBeth-Childs testified Heather reported that petitioner used his

22  fingers to touch "[h]er vaginal lips and her butt." LD 15 at 332.  Asked to read her written report

23  of Heather's account, McBeth-Childs read: "He started rubbing my vaginal area and anus with

24  his hand," and for the next sentence, "His fingers rubbed my vaginal lips and he actually touched

25  my vaginal opening and my anal opening with his finger." LD 15 at 333.  McBeth-Childs also

26  testified "[Heather] said that she felt the tip of his penis against her anus...." LD 15 at 333.

Based on the testimony of McBeth-Childs and the rest of Heather's testimony as set forth by the state court and elsewhere herein, a rational jury could have found beyond a reasonable doubt that petitioner committed attempted anal penetration with a foreign object. Petitioner fails to demonstrate that the state court's rejection of this claim was contrary to, or an unreasonable application of *Jackson* and *Winship* to the facts of this case. *See Jackson*, 443 U.S. at 318; *In re Winship*, 397 U.S. 358 at 364.

### 4. Ground Six

For ground six, petitioner claims there was insufficient evidence to sustain the conviction for count six, rape by force and fear.

a. *State Court Opinion*

The California Court of Appeal rejected this claim on direct appeal in the last reasoned state court decision applicable to the claim:

> Defendant contends the evidence of force, violence, duress, menace, or fear was insufficient to sustain the jury's verdict that he raped Jessica. The contention is without merit.
>
> Rape is sexual intercourse against the person's will "by means of force, violence, duress, menace, or fear of immediate and unlawful injury on the person or another." (Pen. Code, § 261, subd. (a)(2).) Here, defendant grabbed Jessica by the arm and pulled her into his house, closed the door behind him, walked her into the family room and sat her down on a futon, asked if she was nervous, put his hand down her shirt and touched her breast, pushed her down on the futon, unbuckled her belt, again unbuckled her belt after she buckled it back up, climbed on top of her, and raped her. Defendant kept asking if it was okay, and Jessica kept saying no.
>
> Forcible rape is proved "when a jury finds beyond a reasonable doubt that defendant accomplished an act of [rape] by the use of force sufficient to overcome the victim's will." (*People v. Guido* (2005) 125 Cal.App.4th 566, 576.) "[I]n a forcible rape prosecution the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attack, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker." *People v. Griffin* (2004) 33 Cal.4th 1015, 1027, italics in original.)

/////
/////

22

1

2

3

> The force aspect of defendant's rape of Jessica is amply supported in the evidence. Defendant pulled her in the house, touched her breast, unbuckled her pants twice, and forced himself on her, all the while she kept saying "no." The jury drew the reasonable inference that defendant accomplished the rape by force.

4

5

6

> Defendant asserts that the prosecutor's theory during closing argument was that there was no "positive cooperation." We consider whether the evidence is sufficient, not whether the prosecutor's argument is sufficient. Having done so here, we reject defendant's contention the evidence was insufficient.

7

LD 4 at 12-14.

8

b. *Analysis*

9

10

The conclusory assertion in the petition that Jessica's testimony did not establish the offense fails to demonstrate that the state court's rejection of the claim was contrary to, or an

11

12

unreasonable application of clearly established Supreme Court precedent. Petitioner's argument

13

in the traverse that Jessica did not identify any forceful, violent, or threatening conduct by

14

petitioner is equally unavailing. As the state court set forth, the definition of rape encompasses

15

sexual intercourse against the victim's will by means of force, and forcible rape requires only that

16

the force used to accomplish the rape be sufficient to overcome the victim's will. Cal. Pen.

17

Code, §261(a)(2); *People v. Guido*, 125 Cal.App.4th 566, 576 (2005). A reasonable argument

18

exists that petitioner's actions described by Jessica of twice unbuckling her pants, pushing her

19

into a lying position, and climbing on top of her constituted force sufficient to overcome her will.

20

Again, petitioner fails to demonstrate the state court's rejection of this claim was an unreasonable

21

application of *Jackson* or *Winship* to the facts of this case. *See Jackson*, 443 U.S. at 318; *In re*

22

*Winship*, 397 U.S. 358 at 364.

23

**5. *Ground Seven***

24

In ground seven, petitioner claims that he suffered a due process and double

25

jeopardy violation when the trial court acquitted him of rape as charged in count one, but then

26

permitted the jury to find him guilty of the lesser charge of attempted rape.

a. *State Court Opinion*

The California Court of Appeal rejected this claim on direct appeal:

After the close of the prosecution's case, the defense made a motion pursuant to Penal Code section 1118.1 for judgment of acquittal on the count alleging defendant raped Heather. The trial court ruled as follows:

"In terms of the first count, rape, I have heard this evidence. I have weighed this evidence as I am required to. More specifically on the question of penetration, the Court specifically finds under the evidence that is presented here that a conviction of rape as to Count One will not sustain a conviction on appeal, and as such, as to the rape count, the Court directs a verdict of acquittal in terms of the rape count. [¶] However, the Court directs, if the People wish, that they may file a lesser crime based upon the evidence that I have heard in terms of attempted rape, if they wish to do that. It is their option if they wish to do that."

Consistent with the court's order, the prosecution filed an amended information in which the rape count involving Heather was changed to an attempted rape count. The jury found defendant guilty on that count.

On appeal, defendant asserts the trial court could not allow amendment of the information to include an attempted rape count because the court had already acquitted defendant as to that count. Defendant relies on *People v. McElroy* (1989) 208 Cal.App.3d 1415 (*McElroy* ) which held: "When a trial court grants a defendant's motion under [Penal Code] section 1118.1, and remains silent as to whether the acquittal is limited to the charged greater offense, the trial court should not thereafter be permitted to alter or modify its apparently unqualified acquittal by permitting the People (through amendment of the accusatory pleading) to charge necessarily included lesser offenses." (*Id.* at p. 1424; see also *People v. Garcia* (1985) 166 Cal.App.3d 1056.)

Here, the trial court's ruling did not constitute an unqualified acquittal. Reading the ruling as a whole, it is apparent that the trial court found the evidence insufficient only as to the penetration element of the rape charge and intended all along to allow amendment of the information to charge an attempted rape. In other words, the trial court was not silent as to whether the acquittal was limited to the charged greater offense; it explicitly limited the ruling.

But defendant argues the two events-that is, the acquittal and the invitation to amend the information-"occurred *sequentially,* albeit within the same hearing. What did *not* occur was what this Court required in *McElroy,* supra, i.e., that the lesser-included offense

24

1          charge be formally filed *before* the greater charge was dismissed."
       ([Emphasis] in original.) Defendant misreads *McElroy,* in which
2          the Court of Appeal said that "trial courts may properly limit their
       rulings (by, for example, entertaining motions to amend the
3          accusatory pleading specifically to charge the lesser included
       offense before ruling on the section 1118.1 motion)." (208
4          Cal.App.3d at p. 1424.) Here, the trial court allowed amendment of
       the information as part of its ruling on defendant's Penal Code
5          section 1118.1 motion. Having already obtained approval to
       amend, the prosecution had no need to move to amend. There is no
6          reason to require formal amendment before the ruling on the
       motion.

7

8   LD 4 at 14-16.

9      b.  *Analysis*

10         Respondent contends this claim is unexhausted because the argument petitioner

11  advanced on appeal was based solely on state law.  Generally, a state prisoner must exhaust all

12  available state court remedies either on direct appeal or through collateral proceedings before a

13  federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1).  A state

14  prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate

15  state courts at all appellate stages afforded under state law.  *Baldwin v. Reese*, 541 U.S. 27, 29

16  (2004); *Casey v. Moore*, 386 F.3d 896, 915-56 (9th Cir. 2004), cert. denied, 545 U.S. 1146

17  (2005).

18         A fair presentation requires a prisoner to state the facts that entitle him to relief,

19  and to reference the federal source of the law on which he relies, or a case analyzing the federal

20  constitutional guarantee on which he relies, or to simply label his claim "federal."  *Baldwin*, 541

21  U.S. at 32; *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  When a state prisoner fails to

22  exhaust his federal claims in state court and the state court would now find the claims barred

23  under applicable state rules, the federal claims are procedurally defaulted.  *Casey*, 386 F.3d at

24  920; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

25         As to the asserted procedural bar, petitioner counters that the cases cited in his

26  appeal to the California Court of Appeal explicitly referred to and relied on "the double jeopardy

1    jurisprudence of the United States Supreme Court" (Trav. at 43), and further that he explicitly

2    cited and relied on *Ashe v. Swenson*, 397 U.S. 436 (1970) in his petition for review to the

3    California Supreme Court.

4            Review of the record demonstrates that petitioner failed to properly exhaust

5    administrative remedies by fairly presenting his federal claim to the appropriate state court at

6    *each* appellate stage.  Petitioner's brief to the California Court of Appeal on this issue did not

7    advance a double jeopardy argument and did not cite any double jeopardy jurisprudence of the

8    United States Supreme Court. LD 1 at 45-48.  Petitioner's brief to the California Court of

9    Appeal on this issue advanced only a state law argument, followed by an unsupported assertion

10   that "Under these circumstances, the subsequent conviction for attempted rape on Count One

11   violated appellant's right to due process."  LD 1 at 48.  A mere invocation of due process does

12   not meet the Supreme Court's "minimal requirement that it must be clear that a *federal* claim

13   was presented."  *Adams v. Robertson*, 520 U.S. 83, 89 n.3 (1997) (emphasis in original).

14           The fact that petitioner included a double jeopardy argument with citation to *Ashe

15   v. Swenson*, 397 U.S. 436 (1970) in his petition for review to the California Supreme Court (LD

16   5 at 10) does not make up for the omission in his appeal to the California Court of Appeal.  *See

17   Casey v. Moore*, 386 F.3d 896, 916 (2004) ("Even before *Baldwin*, we had held that to exhaust a

18   habeas claim, a petitioner must properly raise it on every level of direct review.") (citing *Ortberg

19   v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992).  A claim not presented to lower courts but

20   expressly addressed by the State's highest court is considered exhausted (*Casey*, 386 F.3d at 916

21   n.18), however here the California Supreme Court rejected the petition for review without

22   explanation.  LD 6.  Accordingly, petitioner's ground seven is unexhausted and no relief is

23   available.

24   *6. Ground Eight*

25           For his eighth and final ground, petitioner claims both a due process violation and

26   ineffective assistance of counsel based on the sentence imposed by the trial court and counsel's

1  failure to object.  In particular, petitioner alleges "[t]he trial court imposed at least ten years of

2  the fourteen year sentence through a series of errors under the state sentencing procedures, and in

3  violation of the federal constitutional requirement of *Cunningham v. California* that sentence

4  enhancements other than prior convictions may be imposed only if based on facts found true by

5  the jury, which did not occur in this case."  Pet. at 9.

6  a.  *State Court Opinion*

7              Presented with the portion of this claim alleging trial court error, the California

8  Court of Appeal rejected petitioner's arguments in a lengthy reasoned state court decision (LD 4

9  at 16-23) that need not be repeated verbatim herein.  Suffice it to say the state court found no

10  errors in the application of state sentencing law (LD 4 at 16-23) went on to reject the federal

11  portion of the claim as follows:

12         Finally, defendant, citing *Blakely v. Washington* (2004) 542 U.S.
       296 [159 L.Ed.2d 403], asserts the trial court relied on "certain
13         factual findings" not found true by a jury to impose consecutive
       sentences in violation of his right to a jury trial.  We reject this
14         assertion for several reasons, each sufficient by itself.

15         First, defendant has forfeited this assertion by failing to identify
       factual findings not necessarily found true by the jury that the trial
16         court relied on to impose consecutive sentencing.  (See *People v.
       Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 [a reviewing court need
17         not discuss claims that are asserted perfunctorily and insufficiently
       developed].)

18
       Second, the California Supreme Court has rejected this contention
19         (*People v. Black* (2005) 35 Cal.4th 1238, 1262, overruled on
       another ground in *Cunningham v. California* (2007) ___ U.S. ___
20         [166 L.Ed.2d 856]), as have we.  (*People v. Hernandez* (2007) 147
       Cal.App.4th 1266.)

21
       And third, the reasons the trial court gave, that the crimes were
22         different crimes and were committed against different victims,
       were necessarily found by the jury in rendering its verdicts.
23         (*Blakely v. Washington*, *supra*, 542 U.S. at p. 303 [no violation of
       right to trial if sentencing decision based on facts reflected in jury
24         verdicts].)

25
  LD 4 at 23-24.
26

b. *Analysis*

Respondent asserts this claim, too, is unexhausted.  The ineffective assistance of counsel portion of the claim is indeed unexhausted.  Petitioner summarily presented an allegation of ineffective assistance at sentencing to the California Supreme Court in his petition for review (LD 10-11), but did not allege the same to the lower state courts at any time, as proper exhaustion requires.  *See Moore*, 386 F.3d at 916.

As to the claim of trial court error and the alleged violation of *Cunningham v. California*, 549 U.S. 270 (2007), petitioner's appellate brief to the California Court of Appeal challenged "the trial court's multiple failures to state reasons for the numerous discretionary sentencing choices."  LD 1 at 48.  He also challenged the state court's imposition of consecutive sentences as a violation of his Sixth Amendment right to jury trial (LD 1 at 67-68), but did not specifically assert as he does in his federal petition that the trial court erred in imposing a sentence enhancement not based on facts found true beyond a reasonable doubt by a jury.  As petitioner noted in his appellate brief, *Cunningham v. California* was then pending before the United States Supreme Court on a grant of certiorari.

In any event, it need not be decided whether petitioner properly exhausted his entire claim of trial court sentencing error or merely a portion of the claim, because the entire claim is clearly without merit.  *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable").

First, petitioner's allegation of multiple sentencing errors under state law is not cognizable here.  The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76

1  (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Mullaney v. Wilbur*, 421 U.S.

2  684, 691 (1975).

3         Second, there were no sentence enhancements improperly imposed based on facts

4  not found true by the jury, in violation of the rule of *Cunningham v. California*, 549 U.S. 270

5  (2007).  Supreme Court precedent clearly establishes that "any fact that increases the penalty for

6  a crime beyond the prescribed statutory maximum must be submitted to jury, and proved beyond

7  a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  The "statutory

8  maximum" in this context is the "maximum" sentence a judge may impose solely on the basis of

9  facts reflected in the jury verdict or admitted by the defendant. *Blakely v. Washington*, 542 U.S.

10  296, 303 (2004).  Pursuant to *Cunningham v. California*, 549 U.S. 270 (2007), the statutory

11  maximum is the middle term of California's determinate sentencing law.  *Cunningham*, 549 U.S.

12  at 293.  In petitioner's case, the trial court imposed the middle term on all counts and thus there

13  was no violation of the rule of *Cunningham*.

14         Finally, to the extent petitioner challenges the trial court's decision to impose

15  consecutive sentences, no relief is available.  The Supreme Court has conclusively determined

16  that the Constitution does not prohibit judges, rather than juries, from finding facts upon which to

17  impose consecutive sentences. *See Oregon v. Ice*, 555 U.S. 160, 169-70 (2009).

18                                     CONCLUSION

19         For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of

20  the Federal Rules Governing Section 2254 Cases in the United States District Courts, "[t]he

21  district court must issue or deny a certificate of appealability when it enters a final order adverse

22  to the applicant." Rule 11, 28 U.S.C. § 2254.  A certificate of appealability may issue under 28

23  U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

24  constitutional right." 28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

25  appealability indicating which issues satisfy the required showing or must state the reasons why

26  such a certificate should not issue. Fed. R. App. P. 22(b).  For the reasons set forth in these

findings and recommendations, petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability should issue.

        Accordingly, IT IS HEREBY RECOMMENDED that:

        1.  Petitioner's application for writ of habeas corpus be denied; and

        2.  The district court decline to issue a certificate of appealability.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 26, 2012.

                                 UNITED STATES MAGISTRATE JUDGE

LS/baro1450.hc